J-S34040-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERMAINE I. GOODMAN | : | |
| | : | |
| Appellant | : | No. 1324 WDA 2023 |

Appeal from the Judgment of Sentence Entered June 29, 2023
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000998-2022

BEFORE:   DUBOW, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED: November 26, 2024**

Appellant, Jermaine I. Goodman, appeals from the judgment of sentence entered in the Court of Common Pleas of Erie County after a non-jury trial resulted in his conviction on three counts of criminal conspiracy to commit contraband/non-controlled substance, pursuant to 18 Pa.C.S.A. § 903(a)(1) and 18 Pa.C.S.A. § 5123(c).  We affirm.

Appellant's criminal conspiracy convictions stem from events occurring in September 2021, when corrections officers employed at SCI Albion became aware that an inmate, Timothy Gains, had received three different deliveries of mailed documents each appearing soiled, discolored, and damp in a manner consistent with their having been sprayed with a liquid.  N.T., 5/9/23, at 37.  A preliminary assessment of the mail using an electronic drug detection device

---

[*] Former Justice specially assigned to the Superior Court.

returned a "positive" reading, N.T. at 40, giving cause to believe the mail was laced with a synthetic cannabinoid and prompted the officers to send it out for further testing. N.T. at 50.

In conjunction with the testing, the officers reviewed recordings of then-recent phone calls of Gains, and they determined that Gains was communicating with parolee Appellant by phone calls, through e-messaging, and ultimately by mail to facilitate the attempted deliveries. N.T. at 54, 55, 86, 94. Ostensibly, the mail from Appellant bore the return address of "Jose & Associates", N.T. at 45, 49, the law firm of Appellant's father, but when DOC investigators questioned Appellant's father, he confirmed that he did not represent Mr. Gaines. N.T. at 111.

Chemical testing of mailings received at SCI Albion on September 21, 25, and 28 revealed that the substance sprayed on the paper contents was the bug repellant Diethylmetatoluamide, more commonly known as DEET. A corrections officer who testified at trial indicated that prisoners surreptitiously consume DEET sprayed on paper by either eating the paper or smoking it. N.T. at 52. Just as synthetic cannabinoids are known as "K2", DEET is known as "KD." N.T. at 51.

At Appellant's trial, the Commonwealth established that Appellant made frequent phone calls to Gains in the timeframe leading up to the three deliveries. The calls contained what the Commonwealth referred to as "coded language" that, on the surface, suggested conversations about women and a dating service known as "muslima.com" but was understood by Gains to

convey that Appellant had been in contact with Gains' family members, from whom Appellant was to receive the drug-treated documentation, and that Gains could expect to receive the items soon. N.T. at 93-100.

Appellant testified in his own defense, and insisted that the subject matter of his conversations with Gains were about nothing more than the plain meaning of the words he was using. When he talked about Muslima.com and "chicks," he was talking about women, he insisted, and when he advised Gaines about getting a lawyer to represent him in a PCRA appeal, he simply suggested that he could forward relevant paperwork to Gaines. N.T. at 106-113. He denied having any part in impregnating the documents with liquified chemicals. N.T. 113-116.

When asked what he meant when he described to Gains how "[s]ome chicks have some powder on them," Appellant admitted to making that statement but dismissed it as meaningless and denied it was code used to indicate how the mailed packaging would appear. N.T. at 118-19. When asked by the Commonwealth to decipher, "This shit ain't even processing on my jawn," Appellant simply answered, "I don't know" and said the messages were from a long time ago. N.T. at 119. When asked what "jawn" means, Appellant provided a most expansive answer, stating the word is slang, it can be a person, place, or thing, and it depends on the context of what is being discussed. N.T. at 120.

The prosecutor also asked Appellant what he meant when he said during a phone call to Gains that he "was going to be sending two chicks" and that

he was going to test out two of them. N.T. at 121. Appellant denied saying such a thing. *Id*. When the prosecutor noted that the recording is of Appellant's phone call to Gains and is obviously of Appellant's voice, Appellant answered, "Yeah, but I never . . . said nothing about testing." *Id*. The prosecutor responded that the trial court can make that determination. *Id*.

Following the completion of testimony and closing arguments, the trial court acquitted Appellant on all underlying charges of Contraband/Non-Controlled Substance, Distributing or Selling a Non-Controlled Substance, and Use of a Communication Facility, because the substance actually sprayed on the documents was DEET, which does not qualify as a non-controlled substance designated as contraband. The trial court, however, found Appellant guilty of three counts of Conspiracy to Commit Contraband/Non-Controlled Substance based on its conclusion that Appellant and Gaines had conspired to smuggle synthetic cannabinoids into SCI-Albion.

On October 17, 2023, the trial court authored an "Order of Court" in which it determined that the Commonwealth presented sufficient evidence that Appellant and his co-defendant, Timothy Gaines, conspired to smuggle contraband cannabinoid into SCI-Albion by having it sprayed or poured onto paper-based mail addressed and delivered to Gaines at the prison, after which he would ingest it by either eating or smoking the paper. The unlawful agreement between them was furthered by their overt acts committed on different dates of sending messages in code to solicit others to prepare the

- 4 -

papers with the illicit substance and deliver them to Appellant who in turn would get them to Gaines.

In the instant appeal, Appellant raises a challenge to the sufficiency of the evidence offered to prove that he conspired with Gaines on three occasions to introduce contraband in the form of "non-controlled substances into SCI Albion and, further, that the substance that was found on the paper that was the subject of [both] the investigation and charges actually contained a non-controlled substance."  Brief of Appellant at 10.

Our standard of review is settled:

> [w]e review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[ ]finder to find every element of the crime beyond a reasonable doubt. Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact[ ]finder.

*Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (internal citations and quotation marks omitted).

A person may be found guilty of conspiracy if "with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission

of such crime or of an attempt or solicitation to commit such crime." 18 Pa.C.S.A. § 903(a).

To prove the existence of a criminal conspiracy, the Commonwealth must demonstrate the defendant: "(1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." **Commonwealth v. Chambers**, 188 A.3d 400, 410 (Pa. 2018) (citations omitted). "Once the conspiracy is established beyond a reasonable doubt, a conspirator can be convicted of both the conspiracy and the substantive offense that served as the illicit objective of the conspiracy." **Id**. at 410 (citations omitted). Moreover, the essence of criminal conspiracy is the agreement between co-conspirators, which can be proved directly or, more often, circumstantially, but is not established by mere association or presence at the crime scene. We have explained:

> [M]ere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators. Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

*Commonwealth v. Golphin*, 161 A.3d 1009, 1018–19 (Pa. Super. 2017) (citations omitted).

Appellant advances a two-prong sufficiency of the evidence argument in which he contends the evidence proved neither an agreement to introduce contraband in the form of *non-controlled* substances into SCI-Albion nor any overt act taken to place contraband in the form of *non-controlled* substances in the correctional institution. The crux of both arguments is that while he was charged with three counts of 18 Pa.C.S. § 903, "Criminal Conspiracy Engaging—Contraband/*Non-Controlled Substance* (M1)," it is undisputed that DEET, the chemical recovered from the papers he delivered to Gains in prison, does not come under the Crimes Code's definition of contraband—non-controlled substance.

Indeed, both the Commonwealth and the trial court concede that DEET is not among the proscribed non-controlled substances listed under 18 Pa.C.S. § 5123, "Contraband." Specifically, Section 5123(c), "Contraband other than controlled substance", provides that that a person commits a misdemeanor of the first degree by giving, selling, or furnishing to any convict in a prison, or bringing into any prison for the use or benefit of the prisoners or inmates, or putting in place where it may be secured by a convict of a prison, *any kind of spirituous or fermented liquor, medicine or poison* without a written permit signed by the physician of such institution. (Emphasis added). At trial, the trial court accepted, and the Commonwealth did not contest, Appellant's

- 7 -

evidence that DEET was not a "medicine" or listed as a "poison" under Pennsylvania's Pharmacy Act, PA ST 63 P.S. § 390-9.

Therefore, Appellant argued the Commonwealth had not established that he agreed with Gaines to smuggle "contraband" in the form of a non-controlled substance proscribed under Section 5123(c) as that term applies to the criminal information's designation of his offense as a first-degree misdemeanor. The trial court, however, sitting as finder of fact in the non-jury trial, determined that Appellant and Gaines had carried out this elaborate scheme not to smuggle mere DEET into prison but, instead, to smuggle a liquified cannabinoid. On this point, the trial court observes that the fact Appellant and Gaines failed to receive from their suppliers the contraband that they clearly conspired and worked to receive was not a defense to the conspiracy charge levelled against Appellant:

> [T]he evidence established that [Appellant] and his Co-Defendant conspired in an attempt to introduce contraband into the state prison by having synthetic cannabinoids impregnated onto "legal" documents that were then mailed to prisoners at the state prison. The evidence at trial established that the documents were, in fact, impregnated with DEET, which is not a controlled substance and is not classified as a poison. . . . [T]he evidence supported the Commonwealth's allegations that the [Appellant] and his co-conspirators had conspired to have paper soaked with synthetic cannabinoids sent into the prison through the mail. The fact that [Appellant] and his Co-Defendant did not actually get the substances they sought to have smuggled into the prison does not negate the fact that they conspired and attempted to have contraband introduced into the state prison; thus, it is not a defense to the conspiracy charges.

Pa.R.A.P. 1925(a) Opinion, 3/22/24, at 3.

- 8 -

Taken together, and viewed in a light most favorable to the Commonwealth as verdict winner, the totality of circumstances reviewed by the trial court permitted it as finder of fact to infer that Appellant and Gains engaged in a conspiracy to smuggle contraband into SCI-Albion even if they ultimately failed to obtain what they planned and worked toward obtaining. In this regard, there existed a web of evidence including their use of coded language during phone conversations recorded by SCI-Albion, their deceptive use of legal mail bearing the name of Appellant's father's law firm, which was not representing Gains in any legal proceeding, and the procurement of a spray application to the documents to Appellant to substantiate the Commonwealth's case that Appellant acted on his agreement with Gains to deliver *bona fide* contraband to Gains in the three packets of legal documents he sent in September 2021. Because the Commonwealth established the existence of a conspiracy between Appellant and Gains to introduce such contraband into SCI-Albion, we affirm judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/26/2024

- 9 -